UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SEAN SWAIN,

      **Plaintiff,**

  v.                                                                            Civil Action 2:23-cv-2809
                                                                             Chief Judge Algenon L. Marbley
                                                                             Magistrate Judge Chelsey M. Vascura

ANNETTE CHAMBERS-SMITH,
*Director, Ohio Department of Rehabilitation
and Corrections*,

      **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, Sean Swain, a state inmate who is proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983 against Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"), alleging that ODRC's legal mail policy violates his rights under the United States Constitution and various Ohio statutes. (Compl., ECF No. 1-1.) This matter is before the Court on Plaintiff's Motion for Leave to File First Amended Complaint (ECF Nos. 21, 23) and Plaintiff's Motion for *Nunc Pro Tunc* Filing of Plaintiff's First Amended Complaint (ECF No. 22). For the following reasons, Plaintiff's Motions are **GRANTED**.

Accordingly, this matter is also before the Court for the initial screen of Plaintiff's First Amended Complaint under 28 U.S.C. § 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief. 28 U.S.C. § 1915A(b); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, Plaintiff **MAY PROCEED** on his official-capacity First Amendment legal mail and access-to-courts claims for injunctive and declaratory relief. However, for the reasons below, the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's remaining claims under § 1915A for failure to state a claim on which relief may be granted.

## I. BACKGROUND

Prior to April 8, 2022, the Ohio Administrative Code prevented state prison officials from opening or inspecting "legal mail," including mail from a state or federal court, outside the presence of the inmate to whom it was addressed:

> "Legal mail" is mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee. It may be opened and inspected for contraband only in the presence of the inmate-addressee. "Legal mail" does not include postcards from a court of law that indicates fees and/or fines owed by the inmate-addressee.

O.A.C. 5120-9-17(B)(2) (valid through April 7, 2022). This procedure was consistent with the holding of the United States Court of Appeals for the Sixth Circuit in *Sallier v. Brooks*, which held:

> In order to guard against the possibility of a chilling effect on a prisoner's exercise of his or her First Amendment rights and to protect the right of access to the courts, we hold that mail from a court constitutes "legal mail" and cannot be opened outside the presence of a prisoner who has specifically requested otherwise.

343 F.3d 868, 877 (6th Cir. 2003). *Sallier* also emphasized that an "opt-in system" (under which legal mail must be opened in an inmate's presence if the inmate has made a specific request to that effect) is "constitutionally sound" only so far as "prisoners received written notice of the policy, did not have to renew the request upon transfer to another facility, and were not required

to designate particular attorneys as their counsel." *Id.* at 874 (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)).

On April 8, 2022, an amended version of O.A.C. 5120-9-17, describing a new legal mail policy, went into effect:

> "Legal mail" is mail addressed to an inmate clearly bearing the return address of an attorney-at-law, a public service law office, a law school legal clinic, court of law, or the correctional institution inspection committee *that is marked with a valid control number provided by the department*. It may be opened and inspected for contraband only in the presence of the inmate-addressee. "Legal mail" does not include postcards from a court of law that indicates fees and/or fines owed by the inmate-addressee. *If mail is received from any of the groups listed without a valid control number, then it may be treated as a regular, non-legal mail, as set forth in paragraph (B)(1) of this rule.*

O.A.C. 5120-9-17(B)(2) (effective April 8, 2022) (emphasis added). Thus, the amended Code provision creates a new requirement for senders of legal mail, including courts and attorneys, to obtain a control number before mailing and to mark the envelope with that number. Plaintiff alleges that the website for court personnel to obtain control numbers for court mailings was non-functional for several months, such that no senders of court mailings could obtain control numbers for that period. (Compl. 8, ECF No. 1-1.)

Although not codified in the previous or current version of O.A.C. 5120-9-17, Plaintiff also alleges that, in practice, prison officials limit all mailings without a control number to five pages in length. (Compl. 9, ECF No. 1-1.) Thus, if a mailing—even one sent by a court or an attorney—lacks a control number, the inmate will receive only the first five pages of that mailing. (*Id.*)[1]

---

[1] ODRC policy states that "[i]ndividuals may enclose up to five pages (one side, 8½" x 11") of copied material in a personal correspondence," but that "[l]egal materials sent by an attorney or court are not subject to this limitation." *See* 75-MAL-02, Printed Material, § VI(C)(3). Plaintiff's allegations suggest that prison officials are not following this legal-materials exception to the five-page limit in practice.

Plaintiff alleges that the combination of these two policies—*i.e.*, treating legal mail without a control number as regular mail, and limiting regular mailings to five pages—has harmed his ability to prosecute three lawsuits. First, his habeas corpus action in the Northern District of Ohio was dismissed "in a process where [Plaintiff] was forced to litigate in the blind" after not receiving full copies of motion briefs and court documents. Second, Plaintiff has not received full discovery materials in an ongoing defamation action in the Mahoning County Court of Common Pleas against his ex-wife, who, as a *pro se* litigant herself, does not qualify to obtain a control number even if she were inclined. The same situation is occurring in a third ongoing lawsuit for unpaid wages in the Mahoning County Court of Common Pleas, such that the defendant's discovery materials were limited to five pages when delivered to Plaintiff. (Compl. 10–11, ECF No. 1-1.) "As a consequence of this, [Plaintiff] is foreseeably hobbled, deprived of discovery materials sent to him in litigation by the defendants in those cases, unable to effectively litigate otherwise meritorious cases." (*Id.* at 11.) Plaintiff further alleges that it would create no additional burden on prison officials to simply provide the entirety of the mailings, as the mailroom staff already photocopy and retain copies of all pages of all mailings received by the prison. (*Id.* at 12.)

Plaintiff's Complaint names only Annette Chambers-Smith, Director of ODRC, as a Defendant. Plaintiff contends that Defendant's actions in promulgating and approving ODRC mail policy (1) violate the separation of powers doctrine, (2) violate the constitutional principle of comity, (3) violate Plaintiff's right to access the courts guaranteed by the United States Constitution, (4) violate Plaintiff's right to redress of grievances, (5) constitute dereliction of duty in violation of Ohio Revised Code § 2921.44, and (6) constitute interference with civil rights in violation of Ohio Revised Code § 2921.45. Plaintiff seeks declaratory and injunctive

4

relief, as well as nominal, compensatory, and exemplary damages, and Plaintiff's costs. (Compl. 13–14, ECF No. 1-1.)

On December 19, 2023, the undersigned issued an Order and Report and Recommendation that permitted Plaintiff to proceed on his official-capacity First Amendment legal mail and access-to-courts claims to the extent that those claims seek injunctive or declaratory relief. (ECF No. 9.) That Order and Report and Recommendation also recommended that Plaintiff's remaining claims be dismissed for failure to state a claim on which relief can be granted, and denied Plaintiff's motions to proceed *in forma pauperis* (ECF No. 1), to appoint counsel (ECF No. 2), to obtain a control number (ECF No. 5), to preclude appearance of the Attorney General on behalf of Defendants (ECF No. 6), and for entry of default (ECF No. 7). No objections to the Report and Recommendation were filed. Defendant answered Plaintiff's Complaint on April 29, 2024. (ECF No. 17.)

On April 30, 2024, the Court entered a Scheduling Order that set the deadline for motions to amend the pleadings on June 14, 2024. (ECF No. 18.) On July 1, 2024, Plaintiff filed the subject motions for leave to amend the Complaint (ECF No. 21) and for *nunc pro tunc* filing of Plaintiff's First Amended Complaint (ECF No. 22), both of which are postmarked June 28, 2024. On July 8, 2024, the Court received another motion by Plaintiff for leave to amend the Complaint (ECF No. 23), which appears to be identical to his previous motion at ECF No. 21—except that the envelope enclosing the second motion for leave to amend is postmarked May 22, 2024. (ECF No. 23, PAGEID #137.) All three of Plaintiff's motions seek leave to file his First Amended Complaint. Plaintiff acknowledges that his motions for leave to amend were not filed until after the June 14, 2024 deadline, but he asserts that the delay was due to the prison's failure to timely send out his motions. (Pl.'s Mot. for *Nunc Pro Tunc* Filing 2, ECF No. 22.)

5

## II. PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND THE COMPLAINT

### A. Standards Governing Pleading Amendments

District courts are required to enter a scheduling order, which limits the time "to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). When, as in the instant case, a party misses a scheduling order's deadlines and seeks a modification of those deadlines, the party must first demonstrate good cause. *See* Fed. R. Civ. P. 16(b)(4); *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 830 (6th Cir. 2005). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted) (citing cases); *see also Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) ("[A] court choosing to modify the schedule upon a showing of good cause, may do so only if it cannot reasonably be met despite the diligence of the party seeking the extension." (quotation omitted)). "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citing *Inge*, 281 F.3d at 625).

If good cause is shown under Rule 16, the Court then considers whether amendment is appropriate under Federal Rule of Civil Procedure 15. Under Rule 15(a)(2), the Court should give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Teft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citations omitted); *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (internal quotations omitted) (noting that courts interpret the language in Rule 15(a) as conveying "a liberal policy of permitting amendments to ensure the determination of claims on their merits"). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for

6

dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Off. of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

B.  Analysis

Plaintiff has demonstrated good cause to amend the case schedule. First, as to diligence, Plaintiff signed and dated his motion to amend the Complaint (ECF Nos. 21, 23) on May 16, 2024, and he asserts that the prison cashier records reflect that postage for mailing to the U.S. District Court in the amount of $2.11 was withdrawn from Plaintiff's account on May 22, 2024. (Pl.'s Mot. for *Nunc Pro Tunc* Filing 2, ECF No. 22.) Although Defendant's opposition brief challenges certain other assertions in Plaintiff's motions, Defendant does not contest that Plaintiff tendered his motion to the prison mailroom for mailing on May 16, 2024, or that postage for that mailing was withdrawn from Plaintiff's account on May 22, 2024. (*See* generally Def.'s Mem. in Opp'n, ECF No. 25.) Moreover, the Court eventually received, on July 8, 2024, a motion for leave to amend that was postmarked May 22, 2024. (*See* ECF No. 23, PAGEID #137.) It thus appears that Plaintiff attempted to file his motion to amend the Complaint well before the June 14, 2024 deadline. And when his motion for leave to amend failed to promptly appear on the docket, Plaintiff filed his motion for *nunc pro tunc* filing only seventeen days after the Scheduling Order's deadline for motions to amend the pleadings. Plaintiff has therefore demonstrated diligence in attempting to comply with the Court's deadlines.

The Court must also consider possible prejudice to Defendant under Rule 16(b)(4). Defendant does not posit, and the undersigned cannot discern, any prejudice as a result of

7

permitting the amendment. Plaintiff's proposed amendment does not come so late in the case as to threaten existing discovery or dispositive motions deadlines. *Cf. Miller v. Admin. Off. of Courts*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions . . . was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."). Moreover, Plaintiff's proposed First Amended Complaint closely mirrors his original Complaint, such that Defendant will not be forced to defend against expanded or unanticipated claims.[2] The Court is therefore unable to discern any undue prejudice that would be caused by permitting the amendment.

Moving next to the standard of Rule 15(a)(2), the Court must "freely give leave when justice so requires." Amendment may be denied under Rule 15(a)(2) only "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *See Carson*, 633 F.3d at 495. For the reasons related to lack of prejudice and minimal delay outlined above, the Court finds that Plaintiff's amendment is not

---

[2] There are only four minor differences between the two pleadings. First, the First Amended Complaint newly alleges that prison mailroom supervisor Lt. J. Beasley confirmed on July 21, 2023, that Plaintiff would receive only five pages of whatever his ex-wife sent as discovery materials in the defamation case, because neither Plaintiff nor his ex-wife (proceeding *pro se*) qualifies to obtain a control number. (Proposed FAC ¶ 31, ECF No. 21). After Plaintiff, in fact, received only five pages, and Plaintiff objected, Beasley reiterated on August 23, 2023, that "[w]ith no control number the mail will be treated as regular mail." (*Id.* at ¶ 32.) Mr. Beasley is not named as a Defendant in the First Amended Complaint. Second, Plaintiff newly alleges that his ex-wife filed a dispositive motion in the defamation case, and that Plaintiff received only five pages of the motion. As Plaintiff was unable to effectively respond to his ex-wife's motion, Plaintiff was forced to retain counsel at a cost of $8,000. (*Id.* at ¶ 35.) Third, Plaintiff increases his compensatory damages demand from $1,312 to $8,000 and decreases his punitive damages demand from $10,000 to $5,000. (*Id.* at ¶¶ 47–48.) Finally, Plaintiff omits certain causes of action that the undersigned previously recommended dismissing (*i.e.*, claims for violating the separation of powers and various criminal statutes, *see* Compl. ¶¶ 38, 42–43, ECF No. 1-1) or found to be subsumed within his First Amendment claims (*i.e.*, a claim for violating the principal of comity) (Compl. ¶ 39, ECF No. 1-1).

brought in bad faith or for dilatory purposes, and that amendment will not result in undue delay. Nor did Defendant argue that the proposed amendments would be futile. Justice thus requires that the Court grant Plaintiff leave to amend his Complaint.

### III. SCREEN OF PLAINTIFF'S AMENDED COMPLAINT

Having granted Plaintiff's motions for leave to amend his Complaint, the undersigned must now screen Plaintiff's First Amended Complaint under 28 U.S.C. § 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

**A.     Standard of Review**

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not "suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up). Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* (cleaned up). Facial

9

plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, when considering a *pro se* plaintiff's Complaint, a Court "must read [the allegations] with less stringency . . . and accept the pro se plaintiff's allegations as true, unless they are clearly irrational or wholly incredible." *Reynosa v. Schultz*, 282 F. App'x 386, 389 (6th Cir. 2008) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)) (internal citation omitted).

**B.      Analysis**

The undersigned construes Plaintiff's First Amended Complaint to advance claims for violating his First Amendment rights to receive legal mail and to access the courts (and finds that his claim for violating his "right to redress of grievances guaranteed by the U.S. Constitution"—alluded to only cursorily in Plaintiff's list of claims—to be encompassed within his First Amendment claims). The undersigned concludes that Plaintiff **MAY PROCEED** on his official-capacity First Amendment legal mail and access-to-courts claims for injunctive and declaratory relief, but **RECOMMENDS** that Plaintiff's remaining claims be dismissed for the following reasons.

Plaintiff does not specify whether he intends to sue Defendant in her individual or official capacity. To the extent that he advances official-capacity claims for money damages, those claims must be dismissed under the doctrine of sovereign immunity. The Eleventh Amendment operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cty.*, 211 F.3d 331, 334 (6th Cir. 2000).

A suit against a state official in his or her official capacity is "not a suit against the official but rather is a suit against the official's office," and is therefore "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit, (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citation omitted).

Here, the first two exceptions do not apply. First, "Ohio has not waived sovereign immunity in federal court." *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Second, "Section 1983 does not abrogate Eleventh Amendment immunity." *Boler*, 865 F.3d at 410 (citing *Will*, 491 U.S. at 66). Yet Plaintiff's claims may be viable under *Ex Parte Young*. The *Ex Parte Young* exception to sovereign immunity allows a plaintiff "to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations, regardless of whether compliance might have an ancillary effect on the state treasury." *Boler*, 865 F.3d at 412 (cleaned up). The exception applies when the plaintiff alleges "an ongoing violation of federal law and seeks relief properly characterized as prospective." *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff alleges an ongoing violation of his First Amendment rights as a result of ODRC's mail policies and practices. Thus, Plaintiff **MAY PROCEED** on his claims for declaratory and injunctive relief against Defendant in her official capacity to redress ongoing violations of his First Amendment rights, but it is **RECOMMENDED** that Plaintiff's official-capacity claims for damages be dismissed.

If Plaintiff intends to sue Defendant in her individual capacity, those claims must be dismissed in their entirety. In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). This is because "§ 1983 liability cannot be imposed under a theory of *respondeat superior.*" *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (internal quotation omitted). Here, Plaintiff's Complaint fails to provide sufficient factual content or context from which the Court could reasonably infer that Defendant Chambers-Smith was personally involved in any violation of Plaintiff's rights to receive legal mail or to access the courts. Even if ODRC's policies caused Plaintiff injury arising out of Defendant's promulgation or approval of those policies, those allegations are appropriately considered via Plaintiff's official-capacity claims. Accordingly, it is **RECOMMENDED** that Plaintiff's individual-capacity claims be **DISMISSED**.

## IV.    DISPOSITION

For these reasons, Plaintiff's Motion for Leave to File First Amended Complaint (ECF Nos. 21, 23) and Plaintiff's Motion for *Nunc Pro Tunc* Filing (ECF No. 22) are **GRANTED**. The Clerk is **DIRECTED** to file on the docket Plaintiff's First Amended Complaint, attached to his Motion at ECF No. 21, PAGEID #109–25. Accordingly, as the First Amended Complaint supersedes Plaintiff's original Complaint, the December 19, 2023 Order and Report and Recommendation (ECF No. 9) is **VACATED IN PART** to the extent that the undersigned

recommended dismissal of Plaintiff's claims. The undersigned's rulings on Plaintiff's motions at ECF Nos. 1, 2, 5–7 remain in effect.

Further, Plaintiff **MAY PROCEED** on his official-capacity First Amendment legal mail claim and his official-capacity First Amendment access-to-courts claim to the extent that those claims seek injunctive or declaratory relief, but the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's remaining claims in the First Amended Complaint under § 1915A for failure to state a claim on which relief may be granted.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE